**TRISTAR CORPORATION, Plaintiff,**

v.

**Ross A. FREITAS and Carolyn Safer Kenner, Defendants.**

**No. CV–93–5722 (RJD).**

United States District Court, E.D. New York.

Nov. 9, 1994.

---

Eliot Polebaum and Anthony C. Cianciotti, Fried, Frank, Harris, Shriver & Jacobson, Washington, DC, for plaintiff.

Ross A. Freitas, appearing pro se.

Carolyn Kenner, appearing pro se.

*MEMORANDUM AND ORDER*

DEARIE, District Judge.

**Preliminary Statement**

Plaintiff, Tristar Corporation ("Tristar"), formerly known as Ross Cosmetics Distribution Centers Inc. ("Ross Cosmetics"), brings this action pursuant to Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) ("the Act"), to recover short swing profits from defendants Ross A. Freitas and Carolyn Safer Kenner. "For the purpose of preventing the unfair use of [inside] information," section 16(b) requires statutory insiders to disgorge to the issuer any "profit" realized from any purchase and sale (or sale and purchase) of securities occurring within a six month period. 15 U.S.C. § 78p(b). Tristar moves for summary judgment pursuant to Fed.R.Civ.P. 56(c) against defendants, who are defending this action *pro se.*

**Background**

Plaintiff Tristar was known as Ross Cosmetics from 1982 through 1993. (Rule 3(g) Statement at ¶ 1.) At the relevant time periods, defendants, in addition to being officers

and directors of Ross Cosmetics, were each beneficial owners of more than 10 percent of the outstanding shares of the corporation. (Rule 3(g) Statement at ¶¶ 4–7, 9–11.) As insiders, defendants were indisputably subject to the reporting requirements of section 16(a), (Rule 3(g) Statement at ¶ 12), which places them within the scope of section 16(b), the statute which requires the disgorgement of insider short swing profits.

On May 31, 1989, when over 3 million shares of Ross Cosmetics were outstanding, defendants Freitas and Kenner entered into a binding contract, captioned "Periodic Loan Agreement" ("Loan Agreement"), to dispose of 906,594 shares of Ross Cosmetics common stock or approximately 28 percent of the outstanding shares. (Rule 3(g) Statement at ¶¶ 7–9.) Under the Loan Agreement, defendants agreed to transfer the Loan Agreement shares ("Agreement Shares") to Starion International Limited, a British Virgin Islands Corporation ("Starion"); for 577,120 of the Agreement Shares defendants were to receive a fixed price amounting to $7.50 per share. Pursuant to the Loan Agreement, payments for the Agreement Shares were characterized as "loan disbursements." The disbursements were to be transferred to defendants in sixteen installments at the $7.50 per share price according to the timetable and in the amount set forth in Schedule A and Schedule B. (Rule 3(g) Statement at ¶ 15.) An initial transfer of 60,868.00 shares for $283,310.62 at the share price of approximately $4.45 a share took place on the execution date of the agreement. (Loan Agreement at Schedules A and B.) Despite the installment feature of the Loan Agreement, it was "executed with the intention and belief ... that it was and is to be performed in its entirety by the parties and was and is to be indivisible." (Loan Agreement at ¶ 10.1(i)).

In a series of transactions occurring between February 2, 1989 and June 15, 1989, defendants Freitas and Kenner purchased shares of Ross Cosmetics. (Rule 3(g) Statement at ¶¶ 28–29.). If the May 31, 1989 agreement was in fact a sale of the Agreement Shares, then defendants clearly purchased and sold shares within a six-month period. Defendants did not file Form 4 as required by section 16(a) until December 18, 1991. (Rule 3(g) Statement at ¶ 32.) Plaintiff brought this action of December 16, 1993.

The Court heard oral argument on this motion on November 4, 1994. As the Court noted, this motion presents two threshold legal issues: (1) whether the Loan Agreement executed on May 31, 1989, although denominated a "loan agreement," actually constituted a binding "contract to sell or otherwise dispose of" shares for the purposes of section 16(b) and (2) whether plaintiff's motion is barred by the applicable statute of limitations.

## Discussion

*Standard of Review*

Summary judgment should be granted only where there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The moving party must demonstrate the absence of any genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment is appropriate if, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986).

*The Statute*

Section 16(b) provides, among other things, that when a statutory insider—that is, an officer or director who is required to file reports under section 16(a)—purchases and sells shares of covered equity securities within a six-month period, the profit on those transactions is recoverable by the issuer.[1]

1. The statute provides in relevant part:
(a) Every person who is directly or indirectly the beneficial owner of more than 10 per centum of any class of any equity security (other than an exempted security) ... or who is a director or an officer of the issuer of such security, ... shall file with the Commission ... a statement indicating his ownership at the close of the calendar month

The statute represents a congressional effort "to curb short-swing trading by insiders whose position gives them access to information not available to the investing public and the ability to influence corporate policy." *Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 592 n. 23, 93 S.Ct. 1736, 1743 n. 23, 36 L.Ed.2d 503 (1973) (citation omitted). Employing what is commonly referred to as a "crude rule of thumb," section 16(b) "is not aimed solely at the actuality of evil, or the veritable employment of inside information for purely speculative purposes, but also at potentiality for evil inherent in all insider short-swing trading." *Newmark v. RKO Gen., Inc.*, 425 F.2d 348, 350–351 (2d Cir.1970) (citation omitted).

*Does the Loan Agreement constitute a section 16(b) "sale"?*

■ The term "sale" is defined in the Act to include "any contract to sell or otherwise dispose of" shares. 15 U.S.C. § 78c(a)(14). In practice, this seemingly straightforward definition can be difficult to apply, although the definition does indicate that "something less than final execution and delivery of securities may constitute a sale." *Portnoy v. Revlon, Inc.*, 650 F.2d 895, 898 (7th Cir.1981). *See also Kern County Land Co.*, 411 U.S. at 593, 93 S.Ct. at 1744 ("The statutory definitions of 'purchase' and 'sale' are broad and, at least arguably, reach many transactions not ordinarily deemed a sale or a purchase.") Given the complexities of modern financial transactions, it is often difficult, looking solely at the terms of the statute, to assess when, and whether, a 16(b) sale has occurred.

■ Since traditional cash-for-stock transactions clearly fall within the purview of the statute, with transactions of this type courts employ an objective approach, not looking beyond the statutory language. With "unorthodox" or "borderline" transactions, courts have developed an alternate approach, inquiring whether the particular type of transaction involved is one that gives rise to speculative abuse. *See Kern County Land Co.*, 411 U.S. at 593–595, 93 S.Ct. at 1744–45 (citations omitted); *see also Newmark*, 425 F.2d at 351 (citing *Blau v. Lamb*, 363 F.2d 507 (2d Cir.1966), *cert. denied*, 385 U.S. 1002, 87 S.Ct. 707, 17 L.Ed.2d 542 (1967)). This "pragmatic" approach, "construing section 16(b) in a manner that seems most consistent with Congress' purpose," has been specifically affirmed and frequently utilized in the Second Circuit. *See, e.g., Mendell v. Gollust*, 909 F.2d 724, 728 (2d Cir.1990) (citations omitted). As a general rule, a sale occurs when "the insider has incurred an 'irrevocable liability' to dispose of the stock so that his 'rights and obligations' have become fixed." *Lewis v. Bradley*, 599 F.Supp. 327, 330 (S.D.N.Y.1984) (citations omitted).

■ The Court has examined the Loan Agreement and finds that on May 31, 1989 defendants did in fact "contract to sell or otherwise dispose of" the Agreement Shares within the meaning of section 16(b). The Court is persuaded that the Loan Agreement has the ordinary indicia of an installment sales contract. On May 31, 1989, defendants deposited all the Agreement Shares into escrow and deposited into escrow proxies appointing Starion as true and rightful attorney and proxy for defendants. Whenever Starion provided a "loan disbursement" to defendants, the appropriate amount of shares were transferred out of escrow to Starion. Each time Starion paid an installment, Starion would receive another block of shares. Accordingly, the Court finds that the agreement was a sale for the purposes of section 16(b), and that defendants were contractually bound on May 31, 1989.[2] *See Blau v. Ogs-*

and such changes in his ownership as have occurred during such calendar month....
(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months ... shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months....
15 U.S.C. § 78p(a)–(b).

2. The Court also notes that even if the Court were to find that this was an "unorthodox" or "borderline" transaction—that is, one that was not obviously a sale—the appropriate analysis is

*bury,* 210 F.2d 426, 427 (2d Cir.1954) (purchase occurred when defendant "incurred an irrevocable liability to take and pay for the stock. Thereafter for all speculative purposes he owned the stock.") *See also Stella v. Graham-Paige Motors Corp.,* 132 F.Supp. 100, 106 (S.D.N.Y.1955) ("a contract for the sale of stock which the seller expected to fill by delivering stock which was subject to a pledge at the time of the making of the contract would result in a 'sale' as of that time rather than as of the date that the seller succeeded in redeeming it from the pledge"); SEA Rel. No. 18114 (Sept. 23, 1981, 46 Fed. Reg. 48147, at Q. 16) (stating that an insider who purchases securities under an installment agreement is deemed to have acquired beneficial ownership of such securities at the time he makes a firm commitment for its purchase). Defendants' argument that the sale was not binding on May 31, 1989 because it was still possible that Starion would breach the contract is rejected. A commonsense assessment of the mechanics of the Loan Agreement reveals that all of the Agreement Shares were committed on May 31, 1989.

*Statute of Limitations Defense*

Defendants' second argument is that plaintiff's action is barred by section 16(b)'s statute of limitations. Section 16(b) provides that no suit to recover short swing profits "shall be brought more than two years after the date such profit was realized." 15 U.S.C. § 78p(b). This suit was filed on December 16, 1993, the sale of shares occurred on May 31, 1989, and all of the relevant purchases occurred between February 2, 1989 and June 15, 1989. Accordingly, if there is no tolling with respect to section 16(b) claims, plaintiff's action is clearly untimely.

The Act is silent as to whether tolling of the two-years limitations period is permitted. Courts who have confronted the issue have noted that the legislative history with respect to this provision is equally silent. *Whittaker v. Whittaker Corp.,* 639 F.2d 516, 527–528 (9th Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981) (citing *Grossman v. Young,* 72 F.Supp. 375, 378 (S.D.N.Y.1947)). There are essentially three possibilities with respect to section 16(b)'s limitations period: (1) that no tolling is allowed under the statute ("the strict interpretation"); (2) that the two-year period is tolled until the corporation had sufficient information to put it on notice of the alleged violation ("the notice or discovery interpretation"); and (3) that the two-year period is tolled until the insider files the requisite 16(a) reports ("the disclosure interpretation"). *Whittaker,* 639 F.2d at 527. *See also* Marc Steinberg and Daryl Landsdale, *The Judicial and Regulatory Constriction of Section 16(b) of the Securities Exchange Act of 1934,* 68 NOTRE DAME L.REV. 33, 55 (1992).

In *Whittaker,* the Ninth Circuit specifically adopted the "disclosure" interpretation, following the lead of several district courts in the Southern District of New York.[3] *See Whittaker,* 639 F.2d at 527–530; *Grossman,* 72 F.Supp. at 378; *Shattuck Denn Mining Corp. v. La Moret,* (1973–1974 Transfer Binder) CCH Fed.Sec.L.Rep. PP 94,429, at 95,472, 1974 WL 373 (S.D.N.Y.1974); *Blau v. Albert,* 157 F.Supp. 816, 819 (S.D.N.Y.1957). This interpretation is eminently sensible: "[I]t would be a simple matter for the unscrupulous to avoid the salutary effect of Section 16(b) which provides a remedy for the recovery of short term profits, simply by failing to file monthly reports in violation of subdivision (a) and thereby concealing from prospective plaintiffs the information they would need to adequately protect their interests. Such a construction would reward the violation of the statute and would manifestly frustrate congressional intent." *Whittaker,* 639 F.2d at 528 (quoting *Blau v. Albert,* 157 F.Supp. at 819) (other citation omitted).

whether the transaction involved is one that gives rise to speculative abuse. *See Kern County Land Co.,* 411 U.S. at 593–595, 93 S.Ct. at 1744–45 (citations omitted). It is clear that the May 31st transaction gives rise to the type of speculative abuse section 16(b) was designed to prohibit.

3. The Court rejects defendants' argument that the Ninth Circuit retreated from the *Whittaker* rule in *Kay v. Scientex Corporation,* 719 F.2d 1009 (9th Cir.1983). The *Kay* case did not involve tolling, nor did the *Kay* Court give any indication that it was abandoning *Whittaker.* *See Kay,* 719 F.2d at 1014–15.

Defendants urge the Court to adopt either the "strict interpretation" that no tolling is available or the "notice or discovery interpretation" which tolls the limitation period only until the corporation had sufficient information to put it on notice of the alleged violation. It is, after all, defendants repeated position that, even though the section 16(a) forms were not filed at the appropriate times, Starion clearly had knowledge of defendants' putative insider trades back in 1989.

Notwithstanding defendants arguments, the Court adopts the disclosure interpretation, an approach that is consistent with precedent, logic, and Congressional intent. Under this approach, since the complaint was filed within two years of defendants' belated filing of the forms required by section 16(a), the action is timely. Accordingly, defendants' statute of limitations defense is rejected.[4]

*Calculation of Damages*

*Lowest Purchase Price, Highest Sales Price*

■ In calculating the profit realized as a result of short swing stock profits, the appropriate method, laid down by the Second Circuit in 1943, is the "lowest price in, highest price out" method. *Smolowe v. Delendo Corp.,* 136 F.2d 231 (2d Cir.), *cert. denied,* 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943). This approach has been unanimously affirmed in this circuit. Using this method, defendants' short swing profits were $101,004.00 for Freitas and $81,893.75 for Kenner.

*Employment Contracts*

■ Tristar argues that, since defendants' employment contracts (44,436.00 for Freitas and $33,172.90 for Kenner) should be regarded as additional consideration for the sale of their shares, these figures should be considered part of the Court's computation of defendants' short swing profits. Defendants dispute that the employment contracts constitute additional short swing profits, stating that their duties and responsibilities remained unchanged by the Loan Agreement. In accordance with the Court's comments in open court, the Court finds that there is a material issue of fact as to whether the employment contracts constitute additional consideration for the sale of the Agreement Shares. Accordingly, on this point, plaintiff's motion for summary judgment is denied.

*Pre-Judgment Interest*

■ Plaintiff seeks prejudgment interest. Since section 16(b) is silent with respect to this issue, the award of prejudgment interest, although generally part of short swing profit recovery, is not mandatory. *Whittaker,* 639 F.2d at 533 (citation omitted). In a section 16(b) case, interest "is given in response to considerations of fairness. It is denied when its exaction would be inequitable." *Blau v. Lehman,* 368 U.S. 403, 414, 82 S.Ct. 451, 457, 7 L.Ed.2d 403 (1962). In this case, considering the equities involved, pre-judgment interest in appropriate.

## Conclusion

Defendants engaged in short swing transactions while they were insiders of Ross Cosmetics. Accordingly, plaintiff's motion for summary judgment for the recovery of the profits from those transactions is granted.

4. In the alternative, defendants contend that the disclosure interpretation cannot survive the Supreme Court's determination in *Lampf, Pleva, Lipkind, Prupis, & Petigrow v. Gilbertson,* 501 U.S. 350, 358–60, 111 S.Ct. 2773, 2780, 115 L.Ed.2d 321 (1991) that tolling is inappropriate under section 10(b) of the Securities Act. In *Lampf,* because section 10(b) is silent on the issue, the Supreme Court selected a one year from disclosure or three year from the conduct framework as the appropriate statute of limitations for section 10(b) violations. The Court then found that the one-year/three-year structure is incompatible with equitable tolling. The rationale underlying the *Lampf* decision is inapplicable to the section 16(b) context. Indeed, in *Lampf* the Supreme Court explicitly distinguished section 16(b) from the other securities statutes that had the one-year/three-year scheme. *Lampf,* 501 U.S. at 360 n. 5, 111 S.Ct. at 2780 n. 5 ("Because [section 16(b)] requires the disgorgement of unlawful profits and differs in focus from section 10(b) and from the other express causes of action, we do not find Section 16(b) to be an appropriate source from which to borrow a limitations period here.") Certainly, *Lampf* does not preclude the Court from concluding that tolling is still available under section 16(b).

With respect to the amounts sought by plaintiff corresponding to the payments due to the employment agreements, there is an question of fact as to whether the employment contracts constitute additional consideration for the sale of the Agreement Shares. Accordingly, on this issue, plaintiff's motion for summary judgment is denied. In all other respects, plaintiff's motion is granted.

SO ORDERED.