**TRISTAR CORPORATION,**
**Plaintiff–Appellee,**

v.

**Ross A. FREITAS and Carolyn Safer Kenner, Defendants–Appellants.**

**No. 1305, Docket 95-7952.**

United States Court of Appeals,
Second Circuit.

Argued April 5, 1996.

Decided May 21, 1996.

---

Anthony C. Cianciotti, Fried, Frank, Harris, Shriver & Jacobson, Washington, DC (Elliot E. Polebaum, Washington, DC, on the brief), for Plaintiff–Appellee.

Chase A. Caro, Caro & Graifman, P.C., New York City (Brian D. Graifman, New York City, of counsel), for Defendants–Appellants.

Before KEARSE, JACOBS and CABRANES, Circuit Judges.

JACOBS, Circuit Judge:

Tristar Corporation ("Tristar") brought this action pursuant to section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), to recover short-swing profits allegedly realized by defendants Ross A. Freitas and Carolyn Safer Kenner through the purchase and sale of securities of Ross Cosmetics Distribution Centers, Inc. ("Ross Cosmetics"), later renamed Tristar. On July 20, 1994, Tristar moved for summary judgment. As an affirmative defense to that motion, the defendants, appearing *pro se*, contended that Tristar's complaint was filed after the two-year period of limitations set forth in section 16(b) had expired. The United States District Court for the Eastern District of New York (Dearie, *J.*) found that the defendants had failed to make the mandatory filings with the Securities and Exchange Commission (the "Commission") that would have provided Tristar with notice of the short-swing transactions and, for that reason, equitably tolled the two-year limitations period for a period sufficient to render timely Tristar's complaint. *Tristar v. Freitas,* 867 F.Supp. 149, 153–54 (E.D.N.Y.1994). Accordingly, the district court granted summary judgment in favor of Tristar.

On appeal, the parties ask us to decide whether the limitations period set forth in section 16(b) is subject to equitable tolling. We need not decide that question because, even assuming *arguendo* that the defendants' non-compliance with the filing requirements of the Securities Exchange Act tolled the limitations period, Tristar's complaint was still untimely filed. We therefore reverse the district court's grant of summary judgment in favor of Tristar.

## BACKGROUND

From 1982 through at least May 31, 1989, defendants Freitas and Kenner served as officers and directors of Ross Cosmetics and were beneficial owners of more than ten percent of the outstanding shares of the company's common stock. In separate transactions

occurring in February, March, May and June 1989, the defendants purchased more than 39,000 shares of Ross Cosmetics at prices ranging from $1.10 to $4.50 per share.

On May 31, 1989, the defendants entered into a binding contract (the "Agreement") to sell to Starion International Limited ("Starion") a total of 906,594 shares of Ross Cosmetics common stock, approximately 28 percent of the company's outstanding shares. The Agreement, which was styled a "Periodic Loan Agreement" by the contracting parties, required the defendants to transfer the shares to Starion in more than a dozen installments. In return, the defendants were to receive "loan disbursements" fixed at between approximately $4.65 and $7.50 for each share in each installment. Through this transaction (and others), Starion acquired control of Ross Cosmetics (which was later re-named Tristar).

On December 16, 1993, Tristar filed its complaint pursuant to section 16(b) of the Securities Exchange Act to recover the defendants' short-swing profits. Section 16(b) permits a corporation or shareholder to bring an action for recovery of profits that a director, officer or principal shareholder realizes by purchasing and selling stock within a six-month period. 15 U.S.C. § 78p(b). Tristar alleged that from February 1989 to June 15, 1989 the defendants purchased shares of Ross Cosmetics at prices from $1.10 to $4.50 per share, and that the defendants then realized a profit exceeding $270,000 on those shares by selling them to Starion, pursuant to the Agreement, at prices between approximately $4.65 and $7.50 per share.

On July 20, 1994, Tristar moved for summary judgment. In an opinion dated November 9, 1994, the district court determined that the Agreement constituted a "sale" of securities as defined by section 3 of the Securities Exchange Act, 15 U.S.C. § 78c(a)(14). 867 F.Supp. at 153. The court also found that the defendants had reaped short-swing profits by entering into the Agreement with Starion, giving rise to a cause of action that accrued on May 31, 1989. Id. at 152–53. But because the two-year period of limitations set forth in section 16(b) expired on May 31, 1991, the district court

found that Tristar's complaint (filed on December 16, 1993) was "clearly untimely." Id. at 153. No one appeals these determinations.

However, the district court found that circumstances warranted granting Tristar equitable relief. Because the Agreement was entered into on May 31, 1989, each defendant was required by section 16(a) to disclose the transaction on or before June 10, 1989 in a filing—designated a "Form 4"—with the Commission. See 17 C.F.R. § 240.16a–3(a) (1995). The defendants, however, failed to file Form 4s until December 18, 1991—over two and one-half years after the filings were due. Tristar contended that it was thus deprived during that period of notice of the defendants' short-swing transactions. The district court, relying on the Ninth Circuit's decision in Whittaker v. Whittaker Corp., 639 F.2d 516, 527–30 (9th Cir.), cert. denied, 454 U.S. 1031, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981), held that section 16(b)'s two-year period of limitations was equitably tolled during the defendants' delinquency. 867 F.Supp. at 153–54. The district court then determined (as did the Ninth Circuit in Whittaker) that the two-year limitations period began to run on the date that the defendants filed their (untimely) Form 4s—on December 18, 1991. Id. at 154. The court therefore held that Tristar's complaint, which was filed on December 16, 1993, was timely under section 16(b), and entered judgment against Freitas for $101,004.00, and against Kenner for $81,893.75, plus pre-judgment interest.

## DISCUSSION

■ Section 16 of the Securities Exchange Act is intended "to curb short-swing trading by insiders whose position gives them access to information not available to the investing public." Kern County Land Co. v. Occidental Petroleum Corp., 411 U.S. 582, 592 n. 23, 93 S.Ct. 1736, 1743 n. 23, 36 L.Ed.2d 503 (1973). Section 16(b) permits a shareholder or corporation to maintain an action against any director, officer or beneficial owner of more than 10% of any class of outstanding shares (a "statutory insider") who profits from short-swing transactions in that corporation's securities. 15 U.S.C.

§ 78p(b). A short-swing transaction is "any purchase and sale, or any sale and purchase, of any equity security of such issuer ... within any period of less than six months." *Id.* A suit to recover such profits may be brought "by the issuer, or by the owner of any security of the issuer ... in behalf of the issuer ...; *but no such suit shall be brought more than two years after the date such profit was realized.*" *Id.* (emphasis added).

Section 16(a) provides a mechanism for facilitating the recovery of short-swing profits by requiring statutory insiders to disclose any change in ownership "within ten days after the close of each calendar month" in which such change occurs. *Id.* § 78p(a). That disclosure is made via a Form 4 (filed with the Commission and made publicly available, *see* 17 C.F.R. § 240.16a–3(a) (1995)) which sets forth the insider's name, the date of the transaction, the number of shares sold or bought and the price per share. *See* Ownership Reports and Trading by Officers, Directors and Principal Security Holders, 56 Fed.Reg. 7242, 7278–81 (Feb. 21, 1991) (instructions for Form 4). Where the requirements of section 16(a) are met, the corporation or shareholder may determine easily and quickly whether any statutory insider has profited from a short-swing transaction by examining the Form 4s filed each month with the Commission. The corporation or shareholder may then use the Form 4s to establish liability in an action under section 16(b). Because the "statute imposes liability without fault within its narrowly drawn limits," *Foremost–McKesson, Inc. v. Provident Secs. Co.,* 423 U.S. 232, 251, 96 S.Ct. 508, 519, 46 L.Ed.2d 464 (1976), recovery in such actions "is virtually automatic." *Whittaker,* 639 F.2d at 522.

■ We have held that a federal statute of limitations may be equitably tolled when "fraudulent or other conduct conceal[s] the existence of a claim." *Bowers v. Transporta-*

*cion Maritima Mexicana, S.A.,* 901 F.2d 258, 264 (2d Cir.1990). Where a claim has already accrued at the time of the defendant's improper conduct, courts suspend the *further* running of the limitations period until the claim is (or should be) known to the plaintiff, or until the improper concealment has ceased: "Equitable tolling of a statute means only that the running of the statute is suspended, not that the limitations period begins over again." *Benge v. United States,* 17 F.3d 1286, 1288 (10th Cir.1994) (quotation marks omitted). *See also Singletary v. Continental Ill. Nat'l Bank & Trust Co.,* 9 F.3d 1236, 1241 (7th Cir.1993) (discussing equitable estoppel); *Bowers,* 901 F.2d at 264.

■ The period of limitations begins running under section 16(b) on the "date [the short-swing] profit was realized." 15 U.S.C. § 78p(b). No appeal is taken from the district court's finding that short-swing profits were "realized" on the date that the Agreement was entered into—May 31, 1989—and therefore that Tristar's claim accrued on that date. But the defendants were under no obligation under section 16(a) to disclose any transaction occurring in May 1989 until June 10, 1989. *See* 15 U.S.C. § 78p(a). So Tristar's putative ignorance of the claim *prior to June 10, 1989* did not result from the lateness of the defendants' filings.[1] Equitable tolling would therefore be unwarranted during the period from May 31, 1989 to June 10, 1989. We thus disagree with the approach taken by the Ninth Circuit in *Whittaker,* 639 F.2d at 530, (and by the district court in this case, 867 F.Supp. at 154) which *restarts* the two-year limitations period on the date that the (untimely) Form 4s are filed.

The defendants failed to make the requisite filings with the Commission until December 18, 1991. That period of delay—from June 10, 1989 to December 18, 1991—arguably deprived Tristar of notice required by law.[2] We therefore hold that any limitations period ran from the date on which Tristar's

---

1. Because a Form 4 need not be filed until ten days after the month in which an insider transaction occurs, *see* 15 U.S.C. § 78p(a), a shareholder or corporation could be deprived of notice that a cause of action has accrued for a period of up to 40 days. For example, if an insider earned a short-swing profit on May 1, 1989, that transac-

tion would not need to be disclosed until June 10, 1989.

2. On June 5, 1989, Ross Cosmetics filed a Form 8–K (which is required to be filed when a change of control of the registrant occurs, *see* 17 C.F.R. § 249.308 (1995)) with the Commission disclosing the Agreement. There is therefore record

claim accrued (May 31, 1989) until the last date on which the defendants could have timely filed their Form 4s (June 10, 1989), *i.e.,* for ten days; that any suspension of the limitations period began on that date and continued until the date on which the Form 4s were actually filed (December 18, 1991); and that the remaining limitations period of two years less ten days began running on that date. Tolling the period of limitations in this manner would extend the time in which Tristar could have brought an action from May 31, 1991 (the date on which the limitations period would otherwise have expired) to December 8, 1993.

Tristar's complaint, of course, was not filed until December 16, 1993. Thus, even if section 16(b) is subject to equitable tolling, Tristar's complaint would be untimely anyway. We therefore reverse the district court's entry of judgment for Tristar and direct the court to dismiss Tristar's complaint.

## CONCLUSION

The judgment of the district court is reversed, and the district court is directed to dismiss the complaint.

evidence that Tristar—which, as noted, is controlled by Starion, the same entity that purchased the defendants' shares—had actual and contemporaneous notice of the defendants' short-swing profits. However, because we hold that Tristar's complaint would not be timely even if the limitations period were tolled, we need not decide whether Tristar's putative knowledge renders the equitable tolling doctrine inapplicable.