# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANDREW E. ROTH,
          *Plaintiff-Appellant,*

          v.

GREGORY REYES; MICHAEL BYRD;
ANTONIO CANOVA; JACK CUTHBERT;
BROCADE COMMUNICATION SYSTEM,
INC.,

          *Defendants-Appellees.*

No. 07-16805

D.C. No.
CV-06-02786-CRB

OPINION

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted
March 12, 2009—San Francisco, California

Filed June 5, 2009

Before: Before: M. Margaret McKeown and Sandra S. Ikuta,
Circuit Judges, and Donald E. Walter,*
Senior District Judge.

Opinion by Judge Ikuta

---

*The Honorable Donald E. Walter, Senior United States District Judge for the Western District of Louisiana, sitting by designation.

6711

## COUNSEL

Willem F. Jonckheer, Aaron Darsky, Robert Schubert, Schubert & Reed LLP, San Francisco, California, Paul D. Wexler, Bragar, Wexler & Eagel, PC, New York, New York, Glenn F. Ostrager, Ostrager Chong Flaherty & Broitman, New York, New York, for the plaintiff-appellant.

Robin E. Wechkin, Heller Ehrman LLP, Seattle, Washington, Robert B. Buehler, Heller Ehrman LLP, New York, New York, Norman J. Blears, Alexander M. R. Lyon, Heller Ehrman LLP, Menlo Park, California for defendant-appellee Antonio Canova.

Nina F. Locker, Steven D. Guggenheim, Katherine L. Henderson, Wilson Sonsini Goodrich & Rosati, PC, for defendant-appellee Brocade Communications Systems, Inc.

Thomas Christopher, Skadden, Arps, Slate, Meagher & Flom LLP, San Francisco, California, Garrett J. Waltzer, Morgan K. Lopez, Skadden, Arps, Slate, Meagher & Flom LLP, Palo Alto, California, Richard Marmaro, Skadden, Arps, Slate, Meagher & Flom LLP, Los Angeles, California, for defendant-appellee Gregory L. Reyes.

Anthony A. De Corso, Eric A. Gressler, Orrick, Herrington & Sutcliffe LLP, Los Angeles, California for defendant-appellee Jack Cuthbert.

John M. Potter, Scott G. Lawson, Patrick C. Doolittle, Josh A. Cohen, Quinn Emanuel Urquhart Oliver & Hedges, LLP, San Francisco, California, for defendant-appellee Michael Byrd.

---

**OPINION**

IKUTA, Circuit Judge:

Andrew Roth brought this action on behalf of Brocade Communications Systems under § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b). He seeks to recover "short swing" profits, defined as "profits earned within a six months' period by the purchase and sale of securities," *Blau v. Lehman*, 368 U.S. 403, 405 (1962), from four of Brocade's top officers: Gregory Reyes, Michael Byrd, Antonio Canova, and Jack Cuthbert. Because Roth's action is barred by § 16(b)'s two-year limitations period, we affirm the district court's dismissal of his complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

I

Section 16(b) was designed to prevent corporate insiders "from profiteering through short-swing securities transactions on the basis of inside information." *Foremost-McKesson, Inc.*

*v. Provident Securities Co.*, 423 U.S. 232, 234 (1976). It is a strict liability rule that "requires the statutorily defined inside, short-swing trader to disgorge all profits realized on all 'purchases' and 'sales' within the specified time period, without proof of actual abuse of insider information, and without proof of intent to profit on the basis of such information." *Id.* at 251 (alteration omitted). As the Supreme Court explained:

> The general purpose of Congress in enacting § 16(b) is well known. Congress recognized that insiders may have access to information about their corporations not available to the rest of the investing public. By trading on this information, these persons could reap profits at the expense of less well informed investors. In § 16(b) Congress sought to curb the evils of insider trading by taking the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great. It accomplished this by defining directors, officers, and beneficial owners as those presumed to have access to inside information and enacting a flat rule that a corporation could recover the profits these insiders made on a pair of security transactions within six months.

*Id.* at 243 (citations, alterations, and internal quotation marks omitted). An action under § 16(b) to recoup short-swing trading profits may be brought by the issuer whose stock was traded or by a stockholder "in behalf of the issuer." 15 U.S.C. § 78p(b).[1]

---

[1]The complete text of § 16(b) provides as follows:

For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, *any profit realized by him from any purchase and sale*, or any sale and purchase, of any equity security of such issuer (other than an exempted security) or a security-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act) *involv-*

Section 16(b) also contains certain express limitations. One such limitation provides that a § 16(b) suit may not be brought "more than two years after the date such [short-swing] profit was realized." *Id.* Another is that § 16(b) "shall not be construed to cover . . . any transaction or transactions which the [Securities and Exchange] Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection." *Id.* Pursuant to this authority, the SEC has promulgated Rule 16b-3(d)(1), which exempts from § 16(b) liability any transaction "involving an acquisition from the issuer . . . whether or not intended for a compensatory or other particular purpose," so long as the "transaction

---

*ing any such equity security within any period of less than six months*, unless such security or security-based swap agreement was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, *irrespective of any intention on the part of such beneficial owner, director, or officer* in entering into such transaction of holding the security or security-based swap agreement purchased or of not repurchasing the security or security-based swap agreement sold for a period exceeding six months.

Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; *but no such suit shall be brought more than two years after the date such profit was realized.*

This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security or security-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act) involved, *or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection.*

15 U.S.C. § 78p(b) (formatting and emphases added). Acquiring a call option is considered a purchase of an equity security under § 16(b). 17 C.F.R. § 240.16b-6(a).

is approved by the board of directors of the issuer, or a committee of the board of directors that is composed solely of two or more Non-Employee Directors." 17 C.F.R. § 240.16b-3(d)(1).[2]

Our cases have also interpreted § 16(b) in light of its companion provision, § 16(a), 15 U.S.C. § 78p(b). *See Whittaker v. Whittaker Corp.*, 639 F.2d 516, 528 (9th Cir. 1981). Section 16(a), as implemented by Rule 16a-3, 17 C.F.R. § 240.16a-3, requires certain corporate insiders to file statements disclosing their acquisitions and dispositions of company stock, as well annual statements of their holdings and transactions.[3] Reading these sections together, we concluded that Congress gave issuers only a short two-year period in which to bring an action to recover insiders' profits under § 16(b) because Congress required insiders to make prompt disclosure of their transactions under § 16(a). *See Whittaker*, 639 F.2d at 528.

---

[2]17 C.F.R. § 16b-3 provides:

(d) Acquisitions from the issuer. Any transaction, other than a Discretionary Transaction, involving an acquisition from the issuer (including without limitation a grant or award), whether or not intended for a compensatory or other particular purpose, shall be exempt if: (1) The transaction is approved by the board of directors of the issuer, or a committee of the board of directors that is composed solely of two or more Non-Employee Directors;
. . . .

[3]Section 16(a)(1) provides:

Every person who is directly or indirectly the beneficial owner of more than 10 percent of any class of any equity security (other than an exempted security) which is registered pursuant to section 78*l* of this title, or who is a director or an officer of the issuer of such security, shall file the statements required by this subsection with the Commission (and, if such security is registered on a national securities exchange, also with the exchange).

15 U.S.C. § 78p(a). Rule 16a-3 implements § 16(a) by requiring that changes in beneficial ownership be filed on Form 4s and annual statements on Form 5s. *See* 17 C.F.R. § 240.16a-3(a), (g).

II

Roth bases his suit on Brocade's grant of call options in its stock (i.e., the right to buy Brocade equity securities at a stated price) to the four individual defendants.[4] Roth alleges that the defendants were corporate insiders for purposes of § 16(b), that they received stock options dated November 19, 1999, November 29, 2000, April 17, 2001, and October 1, 2001, and that they sold shares of Brocade equity securities within six months of these dates. Roth seeks to recoup the defendants' short-swing profits based on their sales of Brocade stock within six months of acquiring the call options. According to the complaint, these transactions took place no later than 2002.[5]

Roth brought suit on April 24, 2006, long after § 16(b)'s two-year limitations period for bringing such claims had passed. Roth's complaint alleges that this limitations period is tolled, however, because the defendants failed to disclose their options acquisitions accurately. According to Roth, the defendants falsely reported that their options acquisitions were exempt from § 16(b) under Rule 16b-3(d). Roth argues that this improper disclosure should toll the running of § 16(b)'s limitations period.

The district court noted, but declined to address, whether

---

[4]Although Brocade is listed in the complaint as a "nominal defendant," we note that § 16(b) does not apply to Brocade. Brocade is not an officer, director, or 10% beneficial owner that realized short-swing profits from a transaction in Brocade equity securities. Moreover, any profits recoverable from a defendant under § 16(b) would inure to Brocade. Because Brocade did not move for dismissal from the action, however, we need not address whether Brocade is a proper defendant. For purposes of this opinion, all references to "defendants" are to the four individual officers named in Roth's complaint.

[5]One sale in the attachments to Roth's complaint was dated October 4, 2006. Roth informed the court at oral argument that this was a typographical error, and the actual date was 2002.

§ 16(b)'s two-year limitations period barred Roth's action. Instead, the district court held that Roth failed to allege facts sufficient to establish that Brocade's grants of call options were not exempt under Rule 16b-3(d)(1). The district court rejected Roth's theory that defendants' transactions did not qualify for the Rule 16b-3(d)(1) exemption because the call options were backdated, i.e., "granted on dates prior to their actual grant dates with exercise prices equal to the market prices on such dates."[6] Such backdating, according to Roth, renders the exemption in Rule 16-3(d)(1) inapplicable because it prevents the grants of stock options from being approved "in advance" of the transaction, which he argues is required by the SEC's interpretation of Rule 16b-3(d)(1). *See* Securities Act Release 8600, 70 Fed. Reg. 46080, 46082 n.32 (Aug. 9, 2005) ("With respect to shareholder, board and Non-Employee Director committee approval, Rule 16b-3(d) requires approval *in advance* of the transaction." (emphasis added)). The district court characterized Roth's argument as a claim that backdating makes the Rule 16-3(d)(1) exemption per se inapplicable to the backdated transactions, and rejected it along with Roth's other efforts to establish that his complaint adequately alleged the non-applicability of Rule 16-3(d)(1). The district court therefore dismissed the complaint, and Roth timely appeals.

---

[6]Such backdating enhances the value of a call option. Companies generally grant call options with an exercise price equal to the market price on the date the options are granted. As a result, the recipient of an option can profit from exercising it only if the corporation's stock increases in value from the date the option was granted. If an option is backdated, giving it an exercise price equal to a market price lower than the price on the date the option was granted, the option has value on the day it is granted. *See SEC v. Reyes*, 491 F. Supp. 2d 906, 908 (N.D. Cal. 2007) (explaining stock-options backdating); *see also* Exchange Act Release No. 28869, Fed. Reg. 7242, 7248-49 (Feb. 21, 1991) (explaining the factors relevant to the value of call options).

### III

We doubt that Roth had an obligation to affirmatively plead the inapplicability of any exemption to § 16(b). *See Rheem Manufacturing Co. v. R.S. Rheem*, 295 F.2d 473, 477 (9th Cir. 1961) (holding that an insider claiming he was exempt from liability under § 16(b) had the burden of bringing himself within the exemption); *see also Sorrell v. SEC*, 679 F.2d 1323, 1326 (9th Cir. 1982) (noting the well-established rulethat "[e]xemptions are construed narrowly and the burden of proof is on the person claiming the exemption."). We do not reach this issue, however, nor do we decide whether Roth's complaint adequately alleged the inapplicability of Rule 16b-3(d), because we hold that Roth's suit is time-barred. Section 16(b) provides that no "suit shall be brought more than two years after the date such profit was realized." 15 U.S.C. § 78p(b). Because Roth's suit was brought more than two years after the defendants' profits were realized, it is untimely under the plain language of § 16(b). We therefore affirm the judgment of the district court on that basis. *See Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 633 (9th Cir. 2008) ("We may affirm the district court on any basis supported by the record." (quoting *Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005))).

Roth argues that the time for filing his action must be tolled because the defendants filed inaccurate disclosures under § 16(a). Roth notes that the forms filed by defendants claimed that the call options granted by Brocade were covered by a Rule 16b-d(3) exemption.[7] Because this claim is false, Roth argues, Brocade (and its shareholders) were not put on notice that the defendants had made short-swing profits from non-

---

[7]The options acquisitions were marked with the code "A," which denotes a "grant, award or other acquisition pursuant to Rule 16b-3(d)." Form 4 and Form 5 Instructions, item 8, *available at http://www.sec.gov/about/forms/form4data.pdf and http://www.sec.gov/about/forms/form5data.pdf.*

exempt transactions. Accordingly, the two-year limitations period should be tolled during the period in which the defendants failed to disclose their transactions accurately as required by § 16(a). *See Socop-Gonzales v. INS*, 272 F.3d 1176, 1184 (9th Cir. 2001) (en banc) (defining "equitable tolling" as "stop[ping] a limitations period from continuing to run after it has already begun to run"); *cf. Tristar Corp. v. Freitas*, 84 F.3d 550, 553 (2d Cir. 1996).

Roth relies on our decision in *Whittaker* for his argument that the defendants' inaccurate disclosures should toll § 16(b)'s limitations period. In *Whittaker*, a corporation recovered short-swing profits from a defendant whose share of the corporation's equity stock, when added to his mother's share, exceeded 10% of the company's equity shares. 639 F.2d at 519. The district court found that the defendant "exercised virtually complete control over his mother's affairs," including her finances and stock holdings, and therefore "must be deemed the beneficial owner of his mother's stock" in the corporation. *Id.* at 519, 523. The court therefore concluded that the defendant was a 10% beneficial owner within the meaning of § 16, who "should have reported the transactions under § 16(a), and [who] was liable to the company under § 16(b) for profits derived from those transactions." *Id.* at 519. The defendant appealed, claiming, among other things, that some of the alleged short-swing profits were unrecoverable under § 16(b)'s two-year limitations period.

**[1]** We rejected this argument, concluding that Congress intended the two-year limitations period to be tolled "when the pertinent § 16(a) reports are not filed." *Id.* at 528. Our conclusion was based on several factors. First, we noted that the legislative history of § 16 demonstrated "a strong congressional intent to curb insider trading abuses," and concluded that "this purpose would be thwarted if insiders could escape liability by not reporting as required under § 16(a)." *Id.* Second, we pointed to "the complementary nature of § 16(a) and § 16(b)," and stated that the short limitations period for bring-

ing actions under § 16(b) was understandable "only in the context of the insider's duty to make prompt disclosure." *Id.* We further relied on the fact that § 16(b) was enforceable by individual shareholders through derivative suits on behalf of their company, and reasoned that, "[i]f insiders could insulate their transactions from the scrutiny of outside shareholders by failing to file § 16(a) reports and waiting for the two year time limit to pass, then Congress' creation of these shareholders' derivative suits would be nullified." *Id.* Finally, we stated that our holding was consistent with "the purpose of § 16 to impose absolute accountability within clearly demarcated boundaries." *Id.* at 529. We reasoned that this purpose is better supported by a rule that the limitations period begins running from a date that can be clearly calculated, such as the "dates on which purchases and sales are made" and "the dates on which § 16(a) reports are filed with the SEC," rather than from the date that a company should have discovered it had a cause of action under § 16(b). *Id.* In light of these factors, we concluded that "tolling of the two year time period is required when the pertinent § 16(a) reports are not filed." *Id.* at 528.

**[2]** The reasoning in *Whittaker* does not support Roth's argument that the time period for bringing an action under § 16(b) should be tolled if an insider does file the required § 16(a) reports but also erroneously claims an exemption for the disclosed transactions. To the contrary, expanding the equitable tolling rule as Roth suggests would be inconsistent with the statutory scheme because it would effectively eliminate the two-year limitations period in any case that turned on the applicability of an exemption. Under Roth's proposed rule, a shareholder could bring a derivative action at any time against an insider who disclosed a purportedly exempt transaction. If a court ultimately determined the insider's claim of exemption was invalid, the company's action against the insider would have been timely because the limitations period was tolled due to the inaccurate disclosure. But even if the insider prevailed, the court's ruling that the insider's claim of

exemption was valid and the company's action was time-barred would come too late to help the insider. The insider would be the victor in a suit that should not have been litigated in the first place. In either scenario, the insider would be put to the expense of defending himself long after the two-year limitations period had run. We may not read § 16(b)'s limitations period in a manner that would effectively nullify the limitations period whenever an insider engaged in an exempt transaction. "In construing a statute we are obliged to give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979).

Other factors we considered in *Whittaker* also weigh against tolling § 16(b)'s limitations period under the circumstances presented in this case. For one, Roth's argument that the time to bring an action under § 16(b) commences only when it has been determined that the § 16(a) filings are free from erroneous claims of exemptions is inconsistent with the congressional goal of having "a limitations period which can be mechanically calculated from objective facts." 639 F.2d at 529. Nor would it further the congressional goal of public disclosure to eliminate the two-year limitations period when an insider erroneously reports a transaction as exempt; to the contrary, doing so would undermine insiders' incentives to disclose exempt transactions at all. Giving effect to the limitations period in § 16(b) whenever an insider discloses relevant transactions, even if the form claims an inapplicable exemption, supports the goals of disclosure and transparency underlying the securities laws.

**[3]** In sum, we decline Roth's invitation to render § 16(b)'s two-year limitations period a nullity in any case turning on the applicability of an exemption. Because we reject Roth's proposed equitable tolling rule as contrary to the statutory scheme Congress created and inconsistent with our analysis in *Whittaker*, we conclude that Roth's suit is barred by § 16(b)'s two-year limitations period. Accordingly, we need not reach Reyes's and Byrd's individual defenses.

The judgment of the district court is AFFIRMED.