## GROSSMAN et al. v. YOUNG et al.

District Court, S. D. New York.

July 3, 1947.

See also 70 F.Supp. 970.

Silver & Saperstein, of New York City (Isaac M. Barnett, of New York City, of counsel), for plaintiffs.

Sullivan & Cromwell, of NewYork City, and Cook, Smith, Jacobs & Beake, of Detroit, Mich. (Inzer B. Wyatt, of New York City, Bethel B. Kelley, of Detroit, Mich., and Bruce A. Hecker, of New York City, of counsel), for defendant.

Roger S. Foster, of Philadelphia, Pa., amicus curiae, for Securities and Exchange Commission.

376

RIFKIND, District Judge.

By his motion under Federal Rules of Civil Procedure, Rule 12(b) (6), 28 U.S. C.A. following section 723c, defendant Leonard A. Young seeks an order dismissing the complaint for its failure to state a claim upon which relief can be granted. Thereby he raises two questions of statutory construction heretofore unanswered. The action is brought under Sec. 16(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78p(b). The complaint states two causes of action whereby plaintiffs, stockholders of the corporate defendant, seek to recover, for the benefit of the corporate defendant, profits alleged to have been made by defendant Young from short term trading in the stock of the corporate defendant. The text of Section 16 is quoted in full in the margin.[1]

The complaint, filed on April 10, 1946, alleges that Young, an officer, director and owner of more than 10% of the outstanding stock of the corporation, which had equity securities outstanding registered on a national securities exchange, by means of a wholly owned and controlled Canadian corporation known as J. M. Quinn Securities, Ltd., traded, and realized profits from trading, in the securities of the corporation, between March, 1937, and March, 1940, and that the profits arose out of purchases and sales and sales and purchases within a period of six months; that Young fraudulently concealed these profits and failed to file the statements required by Sec. 16(a); that on April 18, 1944, the Securities and Exchange Commission instituted an action to compel Young to file such statements; that Young did file statements on February 26, 1945; that by reason of the fraudulent concealment by Young, plaintiffs were prevented from discovering the facts until "sometime subsequent to April 18, 1944"; that on March 21, 1946 [less than sixty days before the commencement of this action], plaintiffs requested the corporation to institute suit under Sec. 16(b) to recover the profits realized by Young and that the corporation failed to do so; that Young exercises effective working control over the corporation and its management making further demands futile.

[1] Sec. 16(a) "Every person who is directly or indirectly the beneficial owner of more than 10 per centum of any class of any equity security (other than an exempted security) which is registered on a national securities exchange, or who is a director or an officer of the issuer of such security, shall file, at the time of the registration of such security or within ten days after he becomes such beneficial owner, director, or officer, a statement with the exchange (and a duplicate original thereof with the Commission) of the amount of all equity securities of such issuer of which he is the beneficial owner, and within ten days after the close of each calendar month thereafter, if there has been any change in such ownership during such month, shall file with the exchange a statement (and a duplicate original with the Commission) indicating his ownership at the close of the calendar month and such changes in his ownership as have occurred during such calendar month.

"(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."

The second cause of action declared in the complaint is of the same character and is based upon the alleged purchase and sale by Young of 11,854 shares of stock of the corporation, in January, 1945.

The grounds upon which dismissal of the complaint is sought by this motion is, as to the first cause of action, that it fails to state a claim because it is not brought within the two year period prescribed by Sec. 16(b), and as to both causes of action, that the complaint discloses that the plaintiffs commenced the action before the expiration of the sixty day period after notice and demand upon the corporation.

■ The first question is whether the allegations of fraud, concealment and delayed discovery are sufficient to justify bringing the action more than two years after the profits were realized. Arguments may be marshalled on both sides of this question. In support of its motion defendant Young contends:

1. Since the action is based upon a newly created statutory right, unknown to the common law and since the statute creating the right provides its own time limitation such limitation constitutes a condition precedent to the maintenance of the action upon the statutory right and is, therefore, not capable of being tolled by fraud or by any other circumstance. The Harrisburg, 1886, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358; Pollen v. Ford Instrument Co., 2 Cir., 1940, 108 F.2d 762; Partee v. St. Louis & S. F. R. Co., 8 Cir., 1913, 204 F. 970, 51 L.R.A.,N.S., 721; United States v. Dawes, 7 Cir., 1945, 151 F.2d 639, 642, certiorari denied, 327 U.S. 788, 66 S.Ct. 808, 90 L. Ed. 1015; Bowles v. Distilling Co., D.C. S.D.N.Y., 1945, 62 F.Supp. 20, 22.

2. The plain language of the statute requires the holding that the action is barred after the expiration of two years from the time when "such profit was realized". This plain meaning of the language is corroborated by comparison with other provisions of the same statute wherein Congress, when such was its intention, explicitly established the date of discovery of the facts as one of the controlling dates in determining the timeliness of the action. Thus in Sec. 9(e) of the same statute it is provided: "No ac-

tion shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation." Section 18(c) of the same statute provides: "No action shall be maintained to enforce any liability created under this section unless brought within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued".

Among the arguments against the construction advocated by the defendant are the following:

1. The Harrisburg case does not establish an inflexible rule that whenever a period of limitation is provided in the very statute creating the right the time limitation conditions the right. In Midstate Horticultural Co., Inc. v. Pennsylvania R. Co., 1943, 320 U.S. 356, 360, 64 S.Ct. 128, 130, 88 L.Ed. 96, the court said, "Origin of the right is not per se conclusive whether the limitation of time 'extinguishes' it or 'merely bars the remedy' with the accepted alternative consequences respecting waiver. Source is merely evidentiary, with other factors, of legislative intent whether the right shall be enforceable in any event after the prescribed time, which is the ultimate question. * * * whether the policy of interstate commerce legislation contemplates the one result or the other. This is the controlling question." See, also, Davis v. Mills, 1904, 194 U.S. 451, 454, 24 S.Ct. 692, 48 L.Ed. 1067.

2. In Exploration Co. v. United States, 1918, 247 U.S. 435, 38 S.Ct. 571, 572, 62 L. Ed. 1200, the court construed the language of the Act of March 3, 1891, 26 Stat. 1093, 43 U.S.C.A. § 1166 note, relating to land patents, which reads: "That suits by the United States to vacate and annul any patent heretofore issued shall only be brought within five years from the passage of this act, and suits to vacate and annul patents hereafter issued shall only be brought within six years after the date of the issuance of such patents." The court held that the defendant's fraud tolled the statute. At page 449 of 247 U.S., at page 574 of 38 S. Ct., the court said, "When Congress passed the act in question the rule of Bailey v.

Glover [21 Wall. 342, 22 L.Ed. 636] was the established doctrine of this court. It was presumably enacted with the ruling of that case in mind. * * * It is not our belief that Congress intended that the Government should be deprived of title to public lands by those who add to the fraud by which they were obtained artifices which enabled them to conceal the fraudulent manner in which they were secured until the action was supposed to be barred by the lapse of six years."

3. Very recently, in Holmberg v. Armbrecht, 1946, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743, 162 A.L.R. 719, the Supreme Court announced the proposition that into every federal statute of limitation is read the old chancery rule "that where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.' * * * If the Federal Farm Loan Act had an explicit statute of limitation for bringing suit under § 16, the time would not have begun to run until after petitioners had discovered, or had failed in reasonable diligence to discover, the alleged deception by Bache which is the basis of this suit."

4. To contrue the statute as advocated by the defendant would defeat the principal purpose for which the statute was enacted. The provision of subdivision (a) which calls for the filing of monthly reports and the provisions of subdivision (b) which provide a remedy for the recovery of short-term profits are asserted to be complementary. The former provides the information which is essential for the application of the latter. It is incongruous to permit an insider to escape repayment of his profits by compounding his fault in failing to file the required reports.

These conflicting arguments focus upon the question whether, as defendant contends, the action is barred in compliance with the statutory command that no such suit shall be brought more than two years after the date such profit was realized, or whether, as plaintiffs and the Securities and Exchange Commission propose, there shall be read into this statute the "mitigating construction" which is "read into every federal statute of limitation", namely, that "the bar of the statute does not begin to run until the fraud is discovered". Holmberg v. Armbrecht, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743, 162 A.L.R. 719. For light in resolving such a problem, we normally turn to the legislative history. In this instance such recourse is fruitless because the questioned language was first inserted in the statute by the conference report. No debate preceded it and none followed.

Appropriate hereto is the familiar comment which appears in the Federalist, No. 37: "When the Almighty himself condescends to address mankind in their own language, his meaning, luminous as it must be, is rendered dim and doubtful, by the cloudy medium through which it is communicated." The will of Congress is no less subject to inevitable distortion by reason of the inadequate medium through which it must be communicated.

Section 16 is part of a comprehensive statute designed by Congress to correct many abuses, which had long received public and congressional attention, in transactions relating to securities. See Smolowe v. Delendo Corp., 2 Cir., 1943, 136 F.2d 231, 148 A.L.R. 300, certiorari denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446. Section 16 was the method selected by congress to control and regulate activities by insiders. The first subdivision imposes the duty of prompt disclosure. The second subdivision provides a civil remedy designed to discourage the activities frowned upon. The short space of time within which the action must be brought under Section 16(b) is intelligible when read in the context of an absolute duty to make prompt and frequent reports of the activities which may give rise to such an action. To allow an offending director or stockholder to escape responsibility under subdivision (b) by violating the provisions of subdivision (a) and by fraudulently concealing his activties which would give rise to the cause of action, would manifestly frustrate the purpose of Congress. Such frustration, if commanded

by the will of Congress, is beyond the power of the courts to correct; but in this instance it is not the product of legislative will if the statute is read as the Supreme Court in the Armbrecht case suggested that such a statute should be read, namely, by importing within it the familiar equitable doctrine of Bailey v. Glover.

The defendant may be right in attaching the label "dictum" to the quoted declaration of the Supreme Court; but it is very explicit dictum; and when dictum of so high a source illumines a path which leads in the direction of more fully achieving the underlying purpose of the statute as I perceive it, I readily yield to the invitation—though command is absent—to follow it.[2]

Such construction inevitably involves an element of evaluation of social purposes and, therefore, conscious or unconscious expression of personal predilection; but the more mechanical rules of construction, far from being free of such infirmity, actually embrace an unstated bias of perhaps greater proportions.

"Some rules of statutory construction come down to us from sources that were hostile toward the legislative process itself and thought it generally wise to restrict the operation of an act to its narrowest permissible compass. However well these rules may serve at times to aid in deciphering legislative intent, they long have been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose, will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy."

Securities and Exchange Commission v. C. M. Joiner Leasing Corp., 1943, 320 U.S. 344, 64 S.Ct. 120, 123, 88 L.Ed. 88.

It is no answer to the argument derived from the dominant policy of the statute that 16(a) is supported by its own criminal sanctions and needs no assistance from the introduction of an expansion joint into the time limitation of 16(b). Not every violation of 16(a) is denounced as a crime by § 32. But even if the criminal and civil sanctions were coextensive, it does not follow that the civil remedy should be so read as to make nonperformance of the obligations of both subdivisions of 16 financially less hazardous than the nonperformance of 16(b) alone.

I reject as a mere play on words the argument that Holmberg v. Armbrecht offers no light for our problem because by its language it is confined to the construction of "statute of limitation" (327 U.S. at page 397, 66 S.Ct. at page 585, 90 L.Ed. 743, 162 A.L.R. 719), whereas the language under examination in 16(b) is asserted not to be a statute of limitation. The opinion of the court expressly rejects such a reading.[3]

The task remains of distinguishing the authorities relied on by defendant. The Harrisburg, 1886, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358, presents no difficulty. That case did not reach the problem of fraud, or for that matter, any circumstance that would excuse delay. The court said (119 U.S. p. 214, 7 S.Ct. 147), "No question arises in this case as to the power of a court of admiralty to allow an equitable excuse for delay in suing, because no excuse of any kind has been shown". The effect of fraud on time limitations applicable to specified rights of action was considered in Pollen v. Ford Instrument Co.,

[2] Alfred F. Conard in "New Ways to Write Laws", 56 Yale Law Journal, 458, 467, 468, (1947) writes: "In the battle of wits between apparently whimsical judges and ever more diligent draftsmen, victory went always to the judges. They had the last word. When exclusio unius would not work, noscitur a sociis could always be brought to play. Today, it is clear that judges are not prisoners of language and do not even pretend to be. * * * Today, judges do not even pretend to make a mechanical application of the words of statutes. They much prefer to discover and apply the purpose of statutes."

[3] "If the Federal Farm Loan Act had an explicit statute of limitation for bringing suit under § 16 [12 U.S.C.A. § 812], the time would not have begun to run until after petitioners had discovered, or had failed in reasonable diligence to discover, the alleged deception by Bache which is the basis of this suit". Holmberg v. Armbrecht, page 397 of 327 U.S., page 585 of 66 S.Ct.

2 Cir., 1940, 108 F.2d 762, 763 and United States v. Dawes, 7 Cir., 1945, 151 F.2d 639, certiorari denied, 327 U.S. 788, 66 S.Ct. 808, 90 L.Ed. 1015. The first arose under the patent laws and the second under the Informer's Statute, 31 U.S.C.A. § 235. Superficial distinctions between these cases and the one at bar may be identified. Thus the language construed in the Pollen case dealt with the quantum of damages. In the Dawes case [151 F.2d 640] the usual words of limitation were followed by the peremptory admonition, "and not afterward". (A similar phrase appears in A. J. Phillips Co. v. Grand Trunk R. Co., 1915, 236 U.S. 662, 666, 35 S.Ct. 444, 59 L.Ed. 774.) I do not rest on these differences. The sufficient distinction is that the courts did not find it necessary, in order to give effect to the dominant purpose of the statutes there construed, to read into their self contained time limitations the "mitigating construction" of Holmberg v. Armbrecht (page 397 of 327 U.S., 35 S.Ct. 444), whereas in the case at bar I find such a necessity.

█ The second cause of action is based upon profits realized in 1945. That cause as well as the first, the defendant moves to dismiss on the ground that it appears on the face of the complaint that the plaintiffs have not complied with the provision of the statute which reads "Suit to recover such profit may be instituted * * * by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter." Admittedly in this case plaintiffs did not wait sixty days after their request to the corporation to bring such suit. The complaint explains their failure to bide the lapse of sixty days in the following language: "In such demand plaintiffs, notified the corporation that in view of the possible contention that the statute of limitations will bar recovery with respect to part of the corporation's claim against the defendant, Leonard A. Young, unless suit is instituted prior to April 19, 1946, it would be inadvisable and prejudicial to the interests of the corporation and its stockholders to await expiration of the sixty day period stated in Section 16(b) of the Se-curities Exchange Act of 1934, before instituting action; and that in the event that such suit should not be instituted by the Corporation within ten days from March 21, 1946, the plaintiffs in behalf of stockholders similarly situated, would institute action against the defendant, Leonard A. Young, in the name and in behalf of the corporation, pursuant to said Section 16(b)." The question is whether the defendant Leonard A. Young has status to raise this objection. It seems to me that the sixty day period specified in Section 16(b) was intended for the benefit of the corporation and not for the benefit of the profiting insider. It was designed to provide the corporation with a reasonable opportunity to institute suit. The corporation, though served with process in this case, has not appeared. Significant is the fact that the statute does not provide that notice shall be given to the wrongdoer of the request addressed to the corporation.

█ The complaint alleges that "By reason of the effective control exercised by said defendant [Young] over the corporation and its management any further demand upon the corporation to institute suit would be futile." For purposes of this motion this allegation must be deemed to be true. Even if we assume, therefore, that the defendant is in a position to raise the objection of failure to comply with the sixty day provision, the futility of the ceremonial required, I believe, should excuse the plaintiffs. Deleware & Hudson Co. v. Albany & Susquehanna R. Co., 1909, 213 U.S. 435, 29 S.Ct. 540, 53 L.Ed. 862, held that under Equity Rule 94, 28 U.S.C.A. following section 723, forerunner of our present Rule 23(b), a prior demand for action by the corporation was excused upon the facts shown, despite the absence from Equity Rule 94 of the words which appear in the present rule, "or the reasons for not making such effort". United States ex rel. Texas P. C. Co. v. McCord, 1914, 233 U.S. 157, 34 S.Ct. 550, 58 L.Ed. 893, relied on by defendant, is readily distinguishable. The case arose under the Materialman's Act of 1905, 33 Stat. 811, 40 U.S.C.A. § 270a note. The materialman, who sued upon the contractor's bond, was suing in his own behalf and not in behalf of the

United States. The purpose of the statute therein construed was to give the United States an opportunity to enforce its own prior claim in its own behalf.

Motion denied.