Felice ROSEN, Derivatively on Behalf of EGGHEAD.COM, INC., and Egghead.Com, Inc., Plaintiffs,

v.

BROOKHAVEN CAPITAL MANAGEMENT, CO., LTD., Focused Capital Partners, L.P., Watershed Partners, L.P., Cadence Fund, L.P., Brookhaven Capital Management, LLC, Piton Partners, L.P., Skye Investment Advisors, LLC, Skye Investments, Inc., Vincent Carrino, Daniel Coleman, Paul McEntire, and Robert Lishman, Defendants.

No. 99 CIV. 9397(CSH).

United States District Court, S.D. New York.

Jan. 9, 2002.

**332**

Paul D. Wexler, Bragar Wexler Eagle & Morgenstern, LLP, New York, NY, Ostrager Chong & Flaherty, LLP, New York, NY, for Plaintiff.

Sheldon Eisenberger, New York, NY, for Defendant.

*MEMORANDUM OPINION
AND ORDER*

HAIGHT, Senior District Judge.

This suit brought pursuant to § 16(b) of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78p(b), recently reassigned from the calendar of Judge Marrero to that of the undersigned and scheduled to begin trial on January 29, 2001, is presently before the Court on six disputed motions *in limine:* five made by the defendants and one by plaintiff. This Opinion resolves the first of those motions, by which defendants seek to preclude certain of plaintiff's claims as time-barred.

## I. BACKGROUND

■ Section 16(b) of the Act "provides that beneficial owners of more than ten percent of any class of an equity security must turn over, to the issuer of that security, any profits earned from a purchase and sale of the securities of that issuer if the purchase and sale are separated by less than six months." *Morales v. Freund,* 163 F.3d 763, 764 (2d Cir.1999). The section "is intended to curb short-swing trading by insiders whose position gives them access to information not available to the investing public." *Tristar Corp. v. Freitas,* 84 F.3d 550, 552 (2d Cir.1996) (citation and internal quotation marks omitted). Section 16(b) further provides:

> Suit to recover such profit may be instituted at law or in equity in any court by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized.

15 U.S.C. § 78p(b).

Plaintiff at bar Felice Rosen, suing derivatively on behalf of Egghead.Com, Inc. ("Egghead"), filed her complaint in this Court on September 2, 1999 against Egghead and various entities and individuals. Rosen alleged that she was a shareholder of Egghead at the pertinent times. The identities and statuses of the several defendants (partnerships, corporations and individuals) are summarized in Judge Marrero's decision denying defendants' motion to dismiss the complaint, familiarity with which is assumed. 113 F.Supp.2d 615 at 617.

As required by § 16(b), plaintiff's counsel sent a letter dated January 4, 1999 to

Egghead's board of directors, requesting "that you investigate" whether the defendants "acting together as a group realized 'short-swing' profits in trading [Egghead] common stock" in violation of § 16(b). Counsel's letter stated at page 2 that on the basis of their review of a Schedule 13D Amendment dated July 6, 1998 filed by defendant Brookhaven Group

> we have determined that the Group garnered short-swing profits of at least $2 million and perhaps as much as $4 million. These profits are calculated by matching purchases by group members beginning on May 27, 1998 with sales by group members on July 6 and 7, 1998.

Counsel's letter added at page 3:

> Our analysis of short-swing profits of the Brookhaven Group is based solely upon information set forth in the Group Schedule 13 D and Amendments thereto. It is possible that Brookhaven Group members engaged in additional transactions in violation of the Exchange Act during the two year period of the statute of limitations. Accordingly, we request that a thorough investigation be conducted into all trading activities by the Brookhaven Group in equity securities of your company.

Having received no satisfactory response from the Egghead board, plaintiff filed this action on September 2, 1999. ¶ 22 of the complaint alleges that certain defendants sold Egghead shares and options on July 6, 1998 and between July 7 and September 30, 1998. ¶ 23 alleges that the sales described in ¶ 22 "are matchable with the following purchases of Egghead common stock made by the following group members during the period commencing May 27, 1998 and ending on July 2, 1998"; ¶ 23 then gives particulars with respect to several defendants.

These allegations are based upon the July 6, 1998 Schedule 13D Amendment to which the demand letter of plaintiff's counsel had referred. ¶ 25 of the complaint alleges that "[i]n their Schedule 13D filing dated November 26, 1997, certain members of the Group reported that they had sold 1,934,600 shares between DSeptember 10, 1997 and November 21, 1997.... Because these Group members failed, in violation of Section 13(d) of the Exchange Act, to rep[ort the purchases that they made while they maintained a greater than 10% beneficial ownership, it is not possible to calculate the exact amount of disgorgable profits." And ¶ 26 of the complaint asserts:

> Moreover, additional damages may be assessed against defendants as a result of additional purchases and sales by members of the Group of which plaintiff is now unaware.

This discussion furnishes the background for defendants' first *in limine* motion, to preclude any claims or evidence relating to periods other than May 27, 1998 through September 30, 1998 and September 10, 1997 through November 21, 1997, on the grounds that claims arising outside those periods are barred by the statute of limitations, viewed in conjunction with Rule 9(f), Fed.R.Civ.P.

## II. DEFENDANTS' MOTIONS TO PRECLUDE CLAIMS

Section 16(b) of the Act provides that no suit filed thereunder "shall be brought more than two years after the date" short-swing profit "was realized." 15 U.S.C. § 78p(b). Plaintiff filed her complaint on September 2, 1999. The complaint alleged that (a) defendants sold Egghead shares between July 6, 1998 and September 30, 1998 which matched purchases made between May 27, 1998 and July 2, 1998; and (b) defendants sold Egghead shares between September 10, 1997 and November 21, 1997. Plaintiff did not allege the

matching purchase dates of those shares because she did not know them, a lack of knowledge plaintiff ascribes to defendants' violation of the reporting requirements of § 13(d) of the Act. Lastly, plaintiff alleged in general terms the possibility of additional § 16(b) damages on account of purchases and sales "of which plaintiff is now unaware." Complaint ¶ 26.

■ Limitations issues readily appear from this chronology. A § 16(b) cause of action accrues when insiders sell shares they purchased less than six months before. An insider's purchase of shares is not tainted by any concept of original sin; the sale is the sin, and the wages of that sin are the profits it generates.[1] Thus the Act's limitations period is keyed to the sale; "no such suit shall be brought more than two years after such profit was realized." 15 U.S.C. § 78p(b). In the case at bar, where the complaint was filed on September 2, 1999, any claim arising out of a sale prior to September 2, 1997 is time-barred, unless plaintiff can somehow avoid the Act's limitations period.

Defendants invoke Rule 9(f), Fed.R.Civ. P., to interdict any effort by plaintiff to avoid the statute of limitations. Rule 9(f) provides:

> For the purpose of testing the sufficiency of a pleading, averments of time and place are material and should be considered like all other averments of material matter.

Defendants contend that because the complaint contains averments of purchases and sales of Egghead shares during specific time periods, Rule 9(f) operates to limit plaintiffs' claims to those accruing within those periods.

■ This contention is separate from the statute of limitations, but may be related to it. *See Hoover v. Langston Equipment Associates, Inc.,* 958 F.2d 742, 745 (6th Cir.1992) ("[A]lthough Rule 9(f) apparently was designed simply to require a higher level of information in the pleadings, the federal courts have employed the rule as a screening device for time barred claims ...") (citing and quoting 5 Wright and Miller, *Federal Practice and Procedure,* § 1308, p. 695 (West 1990)); *Bleecker v. Drury,* 3 F.R.D. 325, 326 (W.D.N.Y. 1944) (Rule 9(f) "require[s] exactitude in this respect, and dates and places set forth in the complaint may be used to set up a defense based on the statute of limitations and other defenses wherein the date and place have a bearing."). "Rule 9(f) does not require the pleader to set out specific allegations of time and place; it merely states the significance of these allegations when they are actually interposed." *Abdulaziz v. City of Philadelphia,* Civ. A. 00–5672, 2001 WL 818476, at *4 (E.D.Pa. June 26, 2001). "[A] date used by a claimant in pleading a claim for relief may trigger a dismissal if the statute of limitations is shown to have run." 2 *Moore's Federal Practice,* § 9.07[1], at 9–41 to 42 (Matthew Bender 3d ed.1997).

■ *Hoover,* 958 F.2d 742, upon which defendants at bar rely, illustrates the application of this principle. In that securities fraud case, plaintiffs alleged that they purchased the limited partnership shares in question "[b]etween December 15, 1980 and February 15, 1982," *id.* at 743. The plaintiffs' precise averment of the timing of their own conduct paved the way for a dismissal based on the statute of limitations. But the case at bar is quite different. Plaintiff's averments of time relate to

---

1. "Because the statute imposes liability without fault within its narrowly drawn limits, recovery in such actions is virtually automat- ic." *Tristar,* 84 F.3d at 553 (citations and internal quotation marks omitted).

the defendants' conduct, not her own; and plaintiff further avers that she lacks the requisite knowledge to plead the timing of further actionable conduct by defendants whose occurrence she suspects. In those circumstances, Rule 9(f) does not operate to limit plaintiff to the time periods that she was in a position to aver. Defendants cite no case giving Rule 9(f) preclusive effect to such a pleading, and I decline to do so here.

However, the statute of limitations remains available to defendants. To avoid its effect, plaintiff relies upon the doctrine of equitable tolling, and in the alternative, upon the manner in which an amended complaint may relate back to the original pleading under Rule 15(c), Fed.R.Civ.P.

## A. *Equitable Tolling*

The Second Circuit has held that "a federal statute of limitations may be equitably tolled when fraudulent or other conduct conceals the existence of a claim." *Tristar*, 84 F.3d at 553 (citing *Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 264 (2d Cir.1990) (internal quotation marks omitted)). The pertinent conduct in the case at bar is defendants' apparently conceded failure to comply with the disclosure requirements of § 16(a) of the Act, 15 U.S.C. § 78p(a).

In *Tristar* the Second Circuit described the purpose and mechanics of the disclosure required by § 16(a):

Section 16(a) provides a mechanism for facilitating the recovery of short-swing profits by requiring statutory insiders to disclose any change in ownership "within ten days after the close of each calendar month" in which such change occurs. That disclosure is made via a Form 4 (filed with the Commission and made publicly available), which sets forth the insider's name, the date of the transaction, the number of shares sold or bought and the price per share. Where the requirements of section 16(a) are met, the corporation or shareholder may determine easily and quickly whether any statutory insider has profited from a short-swing transaction by examining the Form 4s filed each month with the Commission. The corporation or shareholder may then use the Form 4s to establish liability in an action under section 16(b).

84 F.3d at 553. Plaintiff at bar says that "[t]here is no dispute that these defendants never filed a Form 4," Brief at 15. Defendants do not contend otherwise; they are reduced by necessity to the argument that "[t]he Schedule 13D's may be incorrect, but they certainly provide more than enough information by which to frame a complaint," Reply Brief at 6.

 In these circumstances, this question arises: Assuming that defendants were Egghead insiders subject to the provisions of § 16 of the Act, did their conduct in failing to file Form 4s, in violation of § 16(a), conceal the existence of plaintiff's § 16(b) claims to the extent that the § 16(b) statute of limitations is subject to equitable tolling?

The Ninth Circuit answered that question in the affirmative in *Whittaker v. Whittaker Corp.*, 639 F.2d 516 (9th Cir. 1981), reasoning in part that "§ 16(b) is interrelated with the congressionally created reporting requirements of § 16(a)," so that "an insider's failure to disclose transactions in the required § 16(a) reports tolls the two year limitations period for suits under § 16(b) to recover profits concerned with such a non-disclosed transaction." *Id.* at 530; *see* discussion at 527–530.

The Second Circuit does not appear to have squarely addressed the question.

*Tristar,* 84 F.3d 550, leaves the question open:

> On appeal, the parties ask us to decide whether the limitations period set forth in section 16(b) is subject to equitable tolling. We need not decide that question because, even assuming *arguendo* that the defendants' non-compliance with the filing requirements of the Securities Exchange Act tolled the limitations period, Tristar's complaint was still untimely filed.

84 F.3d at 551. The *Tristar* court acknowledged the Ninth Circuit's holding in *Whittaker,* but limited its discussion of that case to a disagreement with respect to the proper calculation of the tolling period if tolling was applicable at all. Based upon its own calculation, the Second Circuit concluded in *Tristar:* "Thus, even if section 16(b) is subject to equitable tolling, Tristar's complaint would be untimely anyway." *Id.* at 554.

While the question remains open in the Second Circuit, judges of this Court have held on at least three occasions that an insider's failure to file Form 4s in compliance with § 16(a) triggered equitable tolling of the § 16(b) limitations period. In *Grossman v. Young,* 72 F.Supp. 375 (S.D.N.Y.1947), apparently the first case in the nation to consider the issue, Judge Rifkind held that the defendant insider's failure to file the statements required by 16(a) tolled the running of the two year statute contained in § 16(b). The plaintiff in *Grossman* alleged that defendant "fraudulently concealed these profits and failed to file the statements required by Sec. 16(a)," 72 F.Supp. at 376; Judge Rifkind, ruling that the § 16(b) limitations period was tolled, reasoned:

> Section 16 was the method selected by Congress to control and regulate activities by insiders. The first subdivision imposes the duty of prompt disclosure.

The second subdivision provides a civil remedy designed to discourage the activities frowned upon. the short space of time within which the action must be brought under § 16(b) is intelligible when read in the context of an *absolute duty* to make prompt and frequent reports of the activities which may give rise to such an action. To allow an offending director or stockholder to escape responsibility under subdivision (b) by violating the provisions of subdivision (a) and by fraudulently concealing his activities which would give rise to the cause of action, would manifestly frustrate the purpose of Congress.

72 F.Supp. at 378 (emphasis added).

In *Blau v. Albert,* 157 F.Supp. 816 (S.D.N.Y.1957), the defendant insider tried to persuade District Judge Irving R. Kaufman (as he then was) that *Grossman* was distinguishable because the plaintiff in that case alleged fraudulent conduct in a manner that the facts in *Blau* did not allow. Judge Kaufman rejected that distinction and applied equitable tolling to the § 16(b) limitations period:

> The moving defendant would have me distinguish the instant case from *Grossman,* on the ground that there is no claim of fraud here and that no fraud could in fact have been practiced upon plaintiff since he did not become a stockholder of Bellanca until after the last of the forms 4 were filed and then almost three years after the transactions complained of. *But the only fraud necessary to invoke the federal equitable doctrine is a violation of the statutory policy against trading by insiders.* "Concealment of that violation, *whether intentional or inadvertent,* effectively prevents suit and demands the 'mitigating construction' of the statute of limitations given by the court in other contexts." Cook & Feldman, *Insider*

*Trading under the Securities Exchange Act,* 66 Harv.L.Rev. 385, 413 (1953).

157 F.Supp. at 818–19 (emphases added). This analysis is entirely consistent with Judge Rifkind's observation in *Grossman* that § 16(a) imposes upon insiders an "absolute duty" to report transactions.

More recently, in *Morales v. Executive Telecard, Inc.,* 95 Civ. 10202, 1998 WL 314734 (S.D.N.Y. June 12, 1998), Judge Wood applied equitable tolling to the § 16(b) statute of limitations where the defendant insiders, while filing other SEC forms, had failed to file Form 4s as required by § 16(a). *Morales* was decided after the Second Circuit's decision in *Tristar,* and the *Morales* defendants tried to persuade Judge Wood that *Tristar* precluded equitable tolling of the § 16(b) limitations period, a contention Judge Wood properly rejected:

> [T]he court's reasoning does not support defendant's position that the *Tristar* court rejected equitable tolling of the § 16(b) limitations period. To the contrary, *Tristar* strongly suggests, in what the *Tristar* court called its holding, that while the limitations period runs from the date the claim accrued to the last date on which a Form 4 could timely be filed, then the limitations period is suspended from the date the Form 4 was due until it was actually filed, when the remaining limitations period begins to run.

1998 WL 314734, at *3.

If it is Judge Wood's view that *Tristar* contains a "holding" that equitable tolling is applicable to § 16(b), I am not sure I can agree, given the *Tristar* court's explicit statement that it was not deciding the question. But certainly *Tristar* does not preclude equitable tolling in that context, and I am free to follow this Court's decisions in *Grossman, Blau,* and *Morales* and apply the doctrine in the case at bar. I

am equally at liberty to agree, as I do, with the Ninth Circuit's reasoning in *Whittaker,* 639 F.2d 516, a decision deriving support from this Court's opinions in *Grossman* and *Blau,* cited with approval by the Ninth Circuit at 639 F.2d at 529.

This brings us to Judge Chin's decision in *Donoghue v. American Skiing Company,* 155 F.Supp.2d 70 (S.D.N.Y.2001), upon which defendants at bar place their primary reliance. In *Donoghue* Judge Chin refused to apply equitable tolling to the § 16(b) limitations period. He did so for two reasons. First, while the corporation and partnership in question had failed to file Form 4s under § 16(a), "the transactions at issue were reported to the S.E.C. by Stephen Feinberg, who possesses voting and investment control over all securities" of the entities involved. 155 F.Supp.2d at 71. On that basis Judge Chin distinguished *Morales v. Executive Telecard,* where, as he noted, "no Form 4s were filed at all with respect to the challenged transactions . . . . Here, in contrast, all of the necessary information was provided to American Skiing shareholders in the Form 4s timely filed by Feinberg." *Id.* at 76. In that particular circumstance, and not surprisingly, Judge Chin held that the § 16(b) limitations period was not subject to equitable tolling; the plaintiff's claims were dismissed as time-barred. I regard that holding as entirely correct.

As a second and apparently alternative basis for refusing to apply equitable estoppel, Judge Chin concluded that plaintiff "has failed to plead with particularity—in fact, has failed to plead at all—the requirements for invoking equitable tolling." 155 F.Supp.2d at 76. He had previously identified those requirements by saying:

> To invoke the doctrine of equitable tolling and overcome defendants' assertion that the claims are time-barred, plaintiff must plead, with the particular-

ity required by Federal Rule of Civil Procedure 9(b), the following: "(1) wrongful concealment by defendants, (2) which prevented plaintiff['s] discovery of the claim, and (3) due diligence by plaintiff[ ] in pursuing discovery of the claim." *Kolbeck v. LIT America, Inc.,* 923 F.Supp. 557, 565 (S.D.N.Y.1996) (citing *Butala v. Agashiwala,* 916 F.Supp. 314, 321 (S.D.N.Y.1996)) (granting defendants' motion to dismiss plaintiff's securities fraud case). As further explained by the Second Circuit (in another context): "Even when such concealment exists, the party seeking the benefits of equitable tolling must have acted reasonably to discover the facts and to protect its rights." *Bowers,* 901 F.2d at 264 (citing *Arneil v. Ramsey,* 550 F.2d 774, 781 (2d Cir.1977)).

*Id.* at 74–75.

With all respect, I disagree with Judge Chin's conclusion that these familiar requirements of pleading and proof in fraud cases apply to the particular circumstances posed by the interrelationship of §§ 16(a) and (b) of the Securities Exchange Act of 1934.

None of the four cases cited to support that conclusion—*Kolbeck, Butala, Bowers,* and *Arneil*—involved an action under § 16(b). They all alleged fraud or comparable conduct in one or another more generalized settings: *Kolbeck,* violations of the anti-fraud provisions of the Commodities Exchange Act; *Butala,* real estate fraud as a predicate for a civil RICO action; *Bowers v. Transportacion Maritima Mexicana, S.A.,* 901 F.2d 258 (2d Cir.1990), insufficiency of a shipowner's notice of withdrawal under ERISA as amended by the Multiemployer Pension Plan Amendments Act; and *Arneil,* violation of the anti-fraud provisions found in § 10(b) of the Securities Exchange Act of 1934.

■ These cases and the pleading and proof requirements they articulate shed no light upon the particularized provisions of § 16 of the Act, coupling the mandatory disclosure requirement of § 16(a) with § 16(b)'s limitations period. If a defendant insider has failed to file § 16(a) reports, a § 16(b) plaintiff need do no more than prove that failure, which *ipso facto* establishes defendant's wrongful concealment preventing plaintiff's discovery of the claim, relieves the plaintiff of making a further showing of his own due diligence, and triggers equitable tolling. That is the conclusion Judge Kaufman reached in *Blau,* 157 F.Supp. at 819: "[T]he only fraud necessary to invoke the federal equitable doctrine is a violation of the statutory trading by insiders"; and concealment of that violation, "whether intentional or inadvertent, effectively prevents suit and demands the mitigating construction of the statute of limitations . . ." I agree with that conclusion, because it is the only way to implement effectively the public policy declared in § 16 of the Act.

■ It only remains to say that the defendants' filing with the SEC of Schedule 13Ds, whether correct or incorrect, cannot excuse their undisputed failure to file Form 4s as required by § 16(a). Judge Wood made that plain in *Morales,* 1998 WL 314734, where she rejected defendants' contention that their Form 144 or Form 10–Q disclosures "should be treated as the functional equivalent of Form 4 disclosures for the purpose of § 16(b) limitations period." *Id.,* at *3. Judge Wood held that given the differences in the timing and amounts of information disclosed by these other forms, "[t]o allow either the Form 144 or the Form 10–Q disclosures to re-commence the § 16(b) limitations period would thwart the statutory and regulatory goals of ensuring that shareholders have prompt and

effective notice of short-swing profits." *Id.* Defendants' 13D filings are ineffective for comparable reasons.

For these reasons, I hold that the doctrine of equitable tolling should be applied in this case. Since the defendants do not dispute that they have never filed Form 4s as required by § 16(a) of the Act, they are not entitled to invoke the statute of limitations contained in § 16(b).

### B. *An Amended Complaint and the Doctrine of Relation Back*

Having denied defendants the benefit of the statute of limitations, I need not decide whether plaintiff could avoid time-bar by amending her complaint and invoking the relation back provisions of Rule 15(c), Fed. R.Civ.P.

Nonetheless, it may be useful to observe that plaintiff makes this suggestion only *en passant* in her reply brief; but Rule 15(a) requires a formal motion to amend a pleading, accompanied by a memorandum of authorities, *see* Local Civil Rule 6.1(a), and none is before the Court. In any event, an amended complaint would be of doubtful utility to plaintiff. Rule 15(c) provides in pertinent part that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . (2) the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . . ." It is well established that if the claim sought to be asserted in an amended complaint was time-barred at the time the original complaint was filed, the relation back doctrine will not save it. *See Mackensworth v. S.S. American Merchant*, 28 F.3d 246, 251–52 (2d Cir.1994); *Stevelman v. Alias Research, Inc.*, 174 F.3d 79, 86–87 (2d Cir.1999) ("Under Fed.R.Civ.P. 15(c), the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party *within the statute of limitations* by the general fact situation alleged in the original pleading.") (emphasis added). In the case at bar, each § 16 swing-sale constitutes a separate transaction. Any claim time-barred on September 2, 1999, when plaintiff filed her original complaint, could not be resuscitated by a subsequently filed amended complaint and the relation back provisions of Rule 15(c).

### III. CONCLUSION

For the foregoing reasons, Rule 9(f), Fed.R.Civ.P., does not operate to limit plaintiff's provable claims; and defendants cannot avail themselves of the statute of limitations contained in § 16(b) of the Act. Defendants' motion to preclude is accordingly denied.

It is SO ORDERED.

