362 F.3d 203
 John H. LITZLER, Chapter 7 Trustee for the Bankruptcy Estate of Data Race, Inc., Plaintiff-Appellee,
v.
CC INVESTMENTS, L.D.C., Castle Creek Partners, LLC., Olympus Securities, Ltd., Nelson Partners, and Citadel Limited Partnership, Defendant-Appellants.
 No. 03-5022.
 United States Court of Appeals, Second Circuit.
 Argued: November 21, 2003.
 Decided: March 29, 2004.
 
 Peter Buscemi, Morgan, Lewis & Bockius, LLP, New York, NY, for Defendants-Appellants Olympus Securities, Ltd., Nelson Partnership and Citadel Limited Partnership.
 Scott Edelman, Milbank, Tweed, Hadley & McCloy LLP, New York, NY, for Defendants-Appellants CC Investments, LDC and Castle Creek Partners, LLC.
 Paul Wexler, Bragar Wexler Eagel & Morgenstern, LLP, New York, NY, and Glenn F. Ostrager, Ostrager, Chong & Flaherty LLP, New York, NY, for Plaintiff-Appellee John H. Litzler, Chapter 7 Trustee for the Bankruptcy Estate of Data Race, Inc.
 Before: JACOBS, STRAUB, and B.D. PARKER
 JACOBS, Circuit Judge.
 
 
 1
 This interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is taken from an order of the United States District Court for the Southern District of New York (Hellerstein, J.) denying a motion to dismiss, as time-barred, a claim under Section 16 of the Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. § 78p(b). The security transactions at issue were made by equity shareholders who were subject to Section 16 only if they constituted a "group" for the purposes of assessing their collective beneficial ownership interest. The shareholders (apparently because they disputed their "group" status) did not file Section 16(a) disclosures, and we now consider whether this non-filing tolled the two-year limitations period of Section 16(b). If the limitations period was tolled by the non-filing, we also must consider whether the tolling ended when the original Board of Directors of the corporation (now supplanted by the issuer's Trustee in bankruptcy) received certain information about the security transactions at issue.
 
 
 2
 Section 16(a) requires that a director, an officer, or a beneficial owner of more than ten percent of a class of registered equity securities must disclose all securities transactions to the Securities and Exchange Commission ("SEC"). 15 U.S.C. § 78p(a). Section 16(b) allows a corporation or shareholder to bring an action to recover profits from the purchase or sale of securities within any six-month period ("short-swing profits") by any person subject to the reporting requirements of Section 16(a). 15 U.S.C. § 78p(b).
 
 
 3
 The bankruptcy trustee of Data Race, Inc., a technology company in Chapter 7 liquidation ("Plaintiff"), seeks to recover short-swing profits allegedly realized by CC Investments, L.D.C., Castle Creek Partners, LLC, Olympus Securities, Ltd., Nelson Partners, and Citadel Limited Partnership (collectively the "Defendants") from securities transactions in 1997 and 1998. The Defendants moved to dismiss on the ground that the claim was barred by the two-year statute of limitations of Section 16(b). After a hearing, the district court ruled that the Defendants' non-compliance with the disclosure requirements of Section 16(a) tolled the two-year limitations period of Section 16(b). The Court granted leave for Defendants to file an interlocutory appeal to this Court under 28 U.S.C. § 1292(b).
 
 
 4
 On appeal, we decide the question that we reserved in Tristar Corp. v. Freitas, 84 F.3d 550 (2d Cir.1996): whether Section 16(b)'s statute of limitations can be equitably tolled if a defendant has not complied with the disclosure requirements of Section 16(a). If so, we must consider whether the tolling period ends when a claimant receives notice that the party who was required to file under Section 16(a) failed to do so.
 
 
 5
 We conclude that the two-year limitations period of Section 16(b) is subject to equitable tolling when a covered party fails to comply with Section 16(a) and that such tolling ends when a potential claimant otherwise receives sufficient notice that short-swing profits were realized by the party covered by Section 16(a). Here, the district court did not clearly decide whether the notice received by Data Race (a 1999 shareholder letter demanding the company try to recover alleged short-swing profits from the transactions) ended the tolling period. Since that issue should be considered in the first instance by the district court, we vacate denial of the motion to dismiss, and we remand for further proceedings.
 
 Background
 
 6
 In a private placement transaction valued at $5 million, Data Race sold [i] shares of its Series C Convertible Preferred Stock and [ii] warrants to purchase shares of its common stock to Defendants CC Investments, L.D.C. ("CC Investments"), Olympus Securities, Ltd. ("Olympus"), and Nelson Partners ("Nelson").[1] That transaction, completed November 7, 1997, was disclosed in a Form 8-K filing to the SEC on November 19, 1997.
 
 
 7
 Agreements entered into by CC Investments, Olympus, and Nelson limited the number of shares of Preferred Stock that each investor could convert to common stock so that no single one of them would own more than 4.99% of the outstanding common stock of Data Race at any one time.[2] Plaintiffs allege that, between January 20, 1998 and July 17, 1998, Defendants converted all of their preferred stock into Data Race common stock and resold the common stock into the market at a profit. None of these transactions were disclosed pursuant to Section 16(a). Defendants claim that disclosure was not required because the sales were made individually for the profit of each individual and none of them beneficially owned more than 10 percent of Data Race stock.
 
 
 8
 In June 1999, Barbara Schaffer, a shareholder of Data Race, demanded that the Board of Data Race commence an action to recover these profits under Section 16(b), but the Board declined. More than three years later, in August 2002, Schaffer filed this suit in her stockholder capacity. In September 2002, the current amended complaint was filed substituting the trustee in bankruptcy as the Plaintiff in the case.
 
 
 9
 Neither party appeared to dispute that if Defendants constituted a "group" within the meaning of the Exchange Act, Section 16(a) of the Exchange Act would have required that they report their Data Race transactions by filing (essentially) contemporaneous disclosure forms with the SEC. See 15 U.S.C. § 78p(a)(2)(C); 15 U.S.C. § 78m(d)(3); 17 C.F.R. § 240.16a-3(a). The parties also appeared to agree that the bankruptcy trustee, as Plaintiff, is charged with any notice given to the Board of Data Race by Schaffer's letter in June 1999. The ground of Defendants' motion to dismiss the complaint was that Section 16(b)'s two-year statute of limitations had expired, and that the Plaintiff had notice of the alleged Section 16(b) violations by virtue of Schaffer's letter. The district court refused to dismiss, holding that the statute of limitations had been equitably tolled by Defendants' failure to file Form 4s reporting their alleged short-swing profits to the SEC.
 
 Discussion
 
 10
 When we review an interlocutory appeal from the denial of a motion to dismiss, we accept as true the allegations of the complaint. Tribune Co. v. Abiola, 66 F.3d 12, 13 (2d Cir.1995) (citations omitted); see also Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (holding that dismissal is proper only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). We thus view the facts of this case, including the allegations that Defendants acted as a "group" for purposes of Section 16, in the light most favorable to Plaintiff.
 
 
 11
 Sections 16(a) and 16(b) of the Exchange Act cover the transactions of all directors, officers, and "[e]very person who is directly or indirectly the beneficial owner of more than 10 percent" of a class of registered equity securities.[3] 15 U.S.C. § 78p(a)(1). At the time that the events of this appeal occurred, Section 16(a) required covered parties to disclose (i) their initial ownership interests, and (ii) subsequent changes thereto, within ten days of a transaction.[4] 15 U.S.C. §§ 78p(a)(2)(B)-(C) (1994) (amended 2002). According to Rule 16a-3, the initial statements of ownership interest are reported on Form 3s; changes in ownership interest are reported on Form 4s. 17 C.F.R. § 240.16a-3(a). Section 16(b) is a strict liability statute whereby
 
 
 12
 any profit realized ... from any purchase and sale ... of any equity security... [by a director, officer, or beneficial owner of more than 10 percent of an equity class] ... within any period of less than six months ... shall inure to and be recoverable by the issuer, irrespective of [intent].
 
 
 13
 15 U.S.C. § 78p(b). Section 16(b) also allows a shareholder of the issuer to recover such short-swing profits on the issuer's behalf "if the issuer shall fail or refuse to bring [or diligently prosecute] such suit within sixty days after request." Id. Under Section 16(b), claims must be brought within two years of any transaction that realizes short-swing profits. Id. The running of the statute of limitations in Section 16(b) is not expressly conditioned upon compliance with Section 16(a).
 
 
 14
 We have never held that courts may toll the time limits of Section 16(b) when the disclosure requirements of Section 16(a) have not been met; our opinion in Tristar expressly declined to resolve the issue. 84 F.3d at 551. In Tristar, several insiders allegedly realized short-swing profits in violation of Section 16(b), but waited to file the Form 4s required by Section 16(a) until more than two and one-half years after the filings were due. Four and a half years after the alleged short-swing transactions, Tristar sued under Section 16(b), alleging that Section 16(b)'s statute of limitations was tolled by the failure to file timely Form 4s. We declined to decide whether tolling applied to Tristar's claims because we concluded that the claim would have been untimely even if the statute had been equitably tolled during the (approximately) two and a half years by which the filing of Form 4s was delayed. We reached that conclusion by computing a hypothetical tolling period based on the two-year statute of limitations, less the statutory grace period — at that time, ten days — that insiders had to file Form 4s under Section 16(a)(2). Id. at 554. Applying this tolling period to the date the Form 4s were ultimately filed, we dismissed Tristar's Section 16(b) claim as untimely by eight days. Id.
 
 
 15
 Not surprisingly, Tristar has been read to imply that the limitations period in Section 16(b) is subject to tolling if a required Form 4 is delayed. In the intervening seven years, three courts in this Circuit have indicated that tolling the statute of limitations in Section 16(b) is sometimes necessary to effectuate the goals of the statute. See Rosen ex rel. Egghead.com, Inc. v. Brookhaven Capital Mgmt. Co. Ltd., 179 F.Supp.2d 330, 337-39 (S.D.N.Y.2002) (tolling the statute of limitations for a Section 16(b) claim against a defendant that failed to file Form 4s); Donoghue v. American Skiing Co., 155 F.Supp.2d 70, 74-75 (S.D.N.Y.2001) (noting the viability of equitable tolling when a plaintiff does not have adequate notice of a Section 16(b) claim); Morales v. Executive Telecard, Ltd., 1998 WL 314734 (S.D.N.Y. June 12, 1998), 1998 U.S. Dist. LEXIS 8839, at *10 (tolling the statute of limitations on a Section 16(b) claim against insiders who failed to file Form 4s but filed other securities forms). These decisions are consistent with the more general principle that "a federal statute of limitations may be equitably tolled when `fraudulent or other conduct conceal[s] the existence of a claim.'" Tristar, 84 F.3d at 553 (quoting Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 264 (2d Cir. 1990)) (alteration in original).
 
 
 16
 We now hold that tolling of the limitations period in Section 16(b), calculated in the way described in Tristar, see id. at 554, using the relevant grace periods of Section 16(a)(2), see 15 U.S.C. §§ 78p(a)(2)(B)-(C), is appropriate when a defendant has failed to comply with the reporting requirements of Section 16(a). Otherwise, "[t]o allow an offending [investor] to escape responsibility under [Section 16(b)] by violating the provisions of [Section 16(a)] ... would manifestly frustrate the purpose of Congress." Grossman v. Young, 72 F.Supp. 375, 378 (S.D.N.Y. 1947).
 
 
 17
 Ordinarily, inquiry notice is sufficient to defeat or end equitable tolling. See Pearl v. City of Long Beach, 296 F.3d 76, 85 (2d Cir.2002) (holding no equitable tolling where plaintiff knew of his injury but was fraudulently induced by police officer's false testimony to settle civil suit for a low amount); Paige v. Police Dep't of the City of Schenectady, 264 F.3d 197, 199-200 (2d Cir.2001) (holding no equitable tolling of statute of limitations where plaintiff, as a result of an assault, knew of a civil rights claim, even if police had concealed the investigation file); Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir.1996) ("Equitable tolling requires a party to pass with reasonable diligence through the period it seeks to have tolled.") However, Section 16 compels disclosure (through a Form 4) that is so clear that an insider's short-swing profits will be discovered without any investigation other than the putting together of two and two. The prophylaxis of Section 16 works by imposing an "absolute duty" of disclosure upon insiders, officers, and the other parties covered by its obligations, Grossman 72 F.Supp. at 378; that mechanism would be impaired if the tolling triggered by non-compliance was ended or defeated by mere inquiry notice, or by circumstances in which a person would or should have realized the non-compliance, or by the ability of a shareholder or company to piece together the substance of a Form 4 from disparate sources of information. We hold that the incentives of Section 16 are best served if tolling is triggered by noncompliance with the disclosure requirements of Section 16(a) through failure to file a Form 4.[5] Such tolling should continue only until the claimant or (depending on the circumstances) the company gets actual notice that a person subject to Section 16(a) has realized specific short-swing profits that are worth pursuing.[6]
 
 
 18
 There seems to be no question that Data Race was on inquiry notice, and could have discovered the fact that Defendants (assuming they constituted a "group") realized short-swing profits that would support a claim for disgorgement. Schaffer's June 1999 letter at least alerted the Data Race Board to transactions by Defendants that may have violated Section 16(b). But the sufficiency of that notice relative to the content of a Form 4 should, in the first instance, be decided in the district court, both on general principles and because the district court can (if necessary) allow or require discovery, further briefing, or trial.
 
 
 19
 Therefore, determination of whether tolling applies depends on whether Schaffer's June 1999 letter, considering the particulars recited and the source, gave Data Race sufficient notice (i.e. notice tantamount to a Form 4) that Defendants had realized specific short-swing profits that were worth bothering to recapture. Assuming the circumstances are found to justify equitable tolling in this case, tolling would of course end on the date that Data Race received sufficient notice of a possible claim under Section 16(b). If equitable tolling is found to apply, the District Court may then proceed with the merits of the case, including an evaluation of whether Defendants constituted a "group" that was required to file a Form 4 under Section 16(a)
 
 
 20
 * * * * * *
 
 
 21
 For the foregoing reasons, the judgment of the district is vacated and remanded for further proceedings.
 
 
 
 Notes:
 
 
 [1]
 A fourth investor in the private placement, Capital Ventures International ("CVI") is not named in Plaintiff's Section 16(b) claim. Defendant Castle Creek Partners, L.L.C. ("CC Partners") was the investment manager for CC Investments. Defendant Citadel Limited Partnership ("Citadel") exercises voting control over all securities owned by Olympus and Nelson
 
 
 [2]
 Plaintiff claims that, by including the 4.99% conversion cap, the three Defendants (two of whom were controlled by Defendant Citadel) and CVI deliberately tried to evade the ten percent reporting threshold of Section 16(a). Notwithstanding these efforts, Plaintiff alleges that Defendants and CVI constituted a "group" as defined by Section 13(d)(e) of the Exchange Act, 15 U.S.C. § 78m(d)(3), and that their collective beneficial interest in Data Race common stock was 19.96%
 
 
 [3]
 According to Rule 16a-1(a)(1), for purposes of Section 16 "the term `beneficial owner' shall mean any person who is deemed a beneficial owner pursuant to section 13(d) [of the Exchange Act]." 17 C.F.R. § 240.16a-1. Section 13(d)(3) states that "two or more persons act[ing] as a ... group for the purpose of acquiring, holding, or disposing of securities of an issuer ... shall be deemed a `person.'" 15 U.S.C. § 78m(d)(3)
 
 
 [4]
 Legislation passed in 2002 now requires that all parties covered by Section 16 must electronically disclose any changes in their equity ownership interests "before the end of the second business day following the day on which the subject transaction has been executed." 15 U.S.C. §§ 78p(a)(2)(C), 78p(a)(4)(A);see also Sarbanes-Oxley Act of 2002, H.R. 3763, 107th Cong. § 403 (2002).
 
 
 [5]
 The author of this opinion subscribes to this holding, but would have preferred to say that the statute of limitations in Section 16(b) is equitably tolled only when the failure to file is intentional or unreasonable. Under such a rule, reasonable advice of counsel or the existence of an unsettled point of law (e.g. what constitutes a "group" under Section 16) could be a defense to equitable tolling. This rule would be consistent with the general principle that "a federal statute of limitations may be equitably tolled when `fraudulent or other conduct conceals the existence of a claim.'"Tristar, 84 F.3d at 553 (quoting Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 264 (2d Cir.1990)). The author would prefer, absent such fraud or concealment, to preserve the operation of the statute of limitations in Section 16(b), which the Supreme Court has described in other contexts as a "period of repose." Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 360 n. 5, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). One possible effect of our holding in this case is that a claim that affects long-settled transactions might hang forever over honest persons.
 
 
 [6]
 See Morales, 1998 WL 314734, 1998 U.S. Dist. LEXIS 8839, at *11 (holding that the only notice sufficient to end tolling is notice that is the "functional equivalent of the Form 4" and that Form 144s and Form 10-Qs did not provide enough notice to end tolling of the statute of limitations in Section 16(b)); see also Rosen, 179 F.Supp.2d at 338-39 (holding that a Form 13D filing did not provide sufficient notice to end tolling).